[Cite as *Schuh v. Schuh*, 2014-Ohio-4755.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| RUDIGER SCHUH, | : | |
| | | CASE NO. CA2014-01-007 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/27/2014 |
| - vs - | | |
| | : | |
| PATRICIA SCHUH, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2012-12-1371

The Lampe Law Office, LLC, M. Lynn Lampe, 1248 Nilles Road, Suite 7, Fairfield, Ohio 45014, for plaintiff-appellee

John M. Holcomb, 6 South Second Street, Suite 311, Hamilton, Ohio 45011, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Patricia Schuh (Wife), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, awarding her $153 a month in spousal support.

{¶ 2} After 17 years of marriage, Patricia and Rudiger Schuh (Husband) were divorced by decree on December 19, 2013. The parties have a son born in 1999. At the

time of the divorce, Husband was 43 years old and employed as a quality engineer with the Ford Motor Company, earning an annual income of $93,850.80. Husband also receives an annual bonus which ranges from $2,500 to $6,000. Husband has a high school diploma, completed an apprenticeship as an electrician, but does not have an engineering degree or a college education.

{¶ 3} Wife was 50 years old, is a licensed cosmetologist, and has been a hairdresser since she was 20 years old. She is self-employed as a hairdresser and a hair salon owner/operator. The parties bought the salon in 2005. The parties' 2011 joint income tax return shows that Wife's annual net income from her business is $28,854. Wife does not deposit her tips into her personal or business bank account, but upon the advice of her accountant, declares 8 to 12 percent of her receipts as tips on her income tax return. Wife testified the $28,854 net income included the percentage of tips she claims as income. She also testified she receives between $20 and $55 a day in tips. Wife does not keep track of how much she earns in tips a year.

{¶ 4} Marital property and marital debts were divided between the parties. Each party received 50 percent of the other party's retirement accounts. Because Wife received a greater share of the marital property and none of the marital debts, equalization of the property division was accomplished by allocating to Husband the sum of $13,658.01 from Wife's half share of the net sale proceeds of the marital residence. With regard to their son, the parties entered into a shared parenting plan, Husband was ordered to pay $840 a month in child support, and the parties were ordered to equally divide any uncovered medical expenses for the child.

{¶ 5} By decision filed on October 21, 2013, the trial court awarded Wife spousal support as follows:

The Court considers most strongly the length of the marriage, the

- 2 -

disparity between [Husband's] income and [Wife's] income, the fact that [Wife] will have to obtain her own medical insurance or close her business to find work with benefits, and the prior standard of living of the parties.

The Court considers the exchange of child support in determining the amount of spousal support, and considers the parties' disparate incomes, even after the exchange of spousal support. The Court further considers the uncertainty of the availability and expense of health insurance for [Wife].

The Court finds that an exchange of spousal support is appropriate.

The trial court also found that (1) the parties were currently earning to their ability; (2) Husband will accumulate significantly more retirement benefits than Wife; and (3) since the parties' separation, Wife's standard of living is significantly lower than that of Husband. The trial court stated it considered the tax consequences of the spousal support award.

{¶ 6} By divorce decree, the trial court ordered Husband to pay Wife $153 a month in spousal support for 12 years. The trial court retained jurisdiction over both the amount and duration of spousal support.

{¶ 7} Wife appeals, raising one assignment of error:

{¶ 8} THE TRIAL COURT ERRED IN AWARDING AN INADEQUATE AND INEQUITABLE AMOUNT OF SPOUSAL SUPPORT FROM APPELLEE TO APPELLANT.

{¶ 9} Wife argues the trial court abused its discretion in awarding her $153 a month in spousal support. Specifically, Wife first argues the trial court failed to consider the tax consequences of the spousal support award in violation of R.C. 3105.18(C)(1)(l). Wife asserts that the spousal support award is "tax-inefficient" because the trial court's decision favors payment of child support over spousal support, and thus, fails to take advantage of the differential tax rates of the parties. Wife also argues the trial court abused its discretion in awarding her such a minimal amount of spousal support given the parties' lengthy marriage, the great disparity in earnings, Husband's significantly greater retirement benefits through

employment, and the fact Wife will have to purchase her own health insurance.

{¶ 10} A trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case. *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 40; *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67 (1990). Absent an abuse of discretion, a spousal support award will not be disturbed on appeal. *Ornelas* at *id.*

{¶ 11} After the division of marital property, a trial court may award reasonable spousal support to either party in a divorce proceeding. R.C. 3105.18(B). In determining the nature, amount, and terms of payment and whether the spousal support is "appropriate and reasonable," the trial court must consider the factors listed in R.C. 3105.18(C)(1). As applicable here, these factors include the parties' respective incomes, earning abilities, ages, retirement benefits, educations, assets and liabilities, their standard of living during the marriage, the duration of their marriage, and the tax consequences of a spousal support award. R.C. 3105.18(C)(1)(a)-(e), (g)-(i), (l). A trial court is also free to consider any other factor it deems relevant and equitable. R.C. 3105.18(C)(1)(n); *Ornelas* at ¶ 41.

{¶ 12} When awarding spousal support, a trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law. *Peters v. Peters*, 12th Dist. Warren No. CA2009-04-037, 2009-Ohio-5929, ¶ 17, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93 (1988). A "trial court is not required to comment on each statutory factor; the record need only show that the court considered the statutory factors when making the award." *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 44.

{¶ 13} Wife first argues the trial court failed to consider the tax consequences of the spousal support award in violation of R.C. 3105.18(C)(1)(l), and asserts that the spousal support award is "tax-inefficient."

{¶ 14} R.C. 3105.18(C)(1)(l) requires a trial court to consider "[t]he tax consequences, for each party, of an award of spousal support." We find that the trial court considered and addressed the tax consequences of its spousal support award as required by R.C. 3105.18(C)(1)(l). In its decision, the trial court stated it "completed a FinPlan analysis, and * * * considered the tax consequences of an order of spousal support," and further stated that "Spousal support will be taxable as income to [Wife] and deductible to [Husband] for tax purposes."[1] *Gentile*, 2013-Ohio-1338 at ¶ 46. In addition, attached to the trial court's decision is a document entitled "Split Screen Summary Analysis – Annual" that includes a tax analysis for both parties, including each party's "Tax Savings from Alimony."

{¶ 15} Notwithstanding Wife's assertion, R.C. 3105.18(C)(1) does not require a spousal support award to be "tax-efficient," nor does it require a trial court to fashion a spousal support award in the most tax advantageous manner or in a manner to obtain a net tax savings. Rather, the statute only requires the trial court to consider the tax consequences of a spousal support award in conjunction with several other factors. *Campbell v. Campbell*, 12th Dist. Warren No. CA2009-04-039, 2009-Ohio-6238, ¶ 23 (no factor should be viewed in isolation; instead, courts must look to the totality of circumstances surrounding the award to ensure there has been no abuse of discretion). We also note that unlike R.C. 3105.18(C)(1)(l), which only requires a trial court to consider the tax consequences of a spousal support award, R.C. 3119.82 by contrast requires the trial court to consider "any net tax savings" in determining which parent may claim the children as dependents for tax purposes. The lack of similar language in R.C.3105.18(C)(1) undermines Wife's argument in that regard.

---

1. "A FinPlan analysis is a computer generated calculation performed by the trial court that determines the amount of money each spouse contributes to the household." *Lumpkin v. Lumpkin*, 9th Dist. Summit No. 21305, 2003-Ohio-2841, ¶ 23, fn. 4. Many trial courts in several appellate districts use the FinPlan analysis when determining spousal and/or child support. *Cramblett v. Cramblett*, 7th Dist. Harrison No. 05 HA 581, 2006-Ohio-4615, ¶ 55.

{¶ 16} In its decision, the trial court noted it "consider[ed] the exchange of child support in determining the amount of spousal support." Wife states that the trial court first determined the amount of the spousal support award and then used that amount to calculate Husband's child support obligation. Wife asserts "this approach ignores the tax consequences of the [spousal support] award," and notes that "the amount of a child support award is not a statutory factor in spousal support calculation. Rather, it is an award of spousal support that is a factor in child support guideline."

{¶ 17} It is difficult to understand the crux of Wife's argument. Wife seemingly argues that a trial court must calculate spousal support before it can calculate child support. However, the statutes governing spousal support and child support do not explicitly address the order in which the support awards must be established. R.C. 3105.18(B) provides that a trial court may award spousal support "after the court determines the division or disbursement of property." R.C. 3105.18(B) does not mention child support. However, one of the factors a trial court must consider in awarding spousal support is "the relative assets and liabilities of the parties, including * * * any court-ordered payments by the parties." R.C. 3105.18(C)(1)(i). "Child support, as a 'court-ordered payment,' is a relevant factor in determining spousal support." *Glassner v. Glassner*, 160 Ohio App.3d 648, 2005-Ohio-1936, ¶ 50 (5th Dist.); *see also Cohoon v. Cohoon*, 2d Dist. Montgomery No. 17728, 2000 WL 43705 (Jan. 21, 2000) (in determining spousal support, trial court is required to consider child support obligation); *Borer v. Borer*, 3d Dist. Seneca No. 13-06-38, 2007-Ohio-3341. Conversely, line 10 of the child support computation worksheet codified in R.C. 3119.022 allows for income adjustment for any "[a]nnual court-ordered spousal support paid to any spouse or former spouse," and R.C. 3119.05(B) allows for deduction of any "court-ordered spousal support actually paid." *See also Albright v. Albright*, 4th Dist. Lawrence No. 06CA35, 2007-Ohio-3709.

{¶ 18} Wife also seems to argue that the amount of the spousal support award should have been greater as it would have benefited both parties. Instead, she asserts,"[b]y favoring payment of child support over spousal support, the [trial] court has squandered the possibility that, by taking advantage of the differential tax rates of the parties, Wife could have realized more net after-tax income without reducing Husband's net after tax income."

{¶ 19} The trial court found that the marginal tax rate for Husband and Wife was 29.7 percent and 18.5 percent respectively. Based upon these tax rates, every additional $1,000 in child support would save Husband $297 in taxes while costing Wife $185 in taxes, for a net savings of $112 (not including state taxes or consideration of any other tax deductions, credits, etc. to which the parties may be entitled). Therefore, absent a significant increase in the spousal support award, any net tax savings by the parties would be minimal.

{¶ 20} In addition, a child support determination "calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due." *Mogg v. McCloskey*, 7th Dist. Mahoning No. 12 MA 24, 2013-Ohio-4358, ¶ 34; *Wolf-Sabatino v. Sabatino*, 10th Dist. Franklin No. 12AP-1042, 2014-Ohio-1252 (where the basic schedule and worksheet apply, the guideline amount is rebuttably presumed to be the correct amount of child support to be awarded); R.C. 3119.03. Deviating from the trial court's calculation of the child support amount would have required a finding that the guideline amount was unjust, inappropriate, and not in the child's best interest. Further, Wife's spousal support is terminable upon Wife's "remarriage or cohabitation," which events would not terminate the child support award. Shifting child support in favor of a greater amount of spousal support for tax purposes would not serve the child's best interest.

{¶ 21} We therefore find that the trial court properly considered the tax consequences of the spousal support award as required under R.C. 3105.18(C)(1)(l).

{¶ 22} Wife also argues the trial court abused its discretion in awarding such a minimal amount of spousal support given the parties' lengthy marriage, the great disparity in earnings, Husband's significantly greater retirement benefits through employment, and the fact Wife will have to purchase her own health insurance.

{¶ 23} Upon a thorough review of the record, we find that the trial court did not abuse its discretion in awarding Wife $153 a month in spousal support. The trial court conducted an exhaustive analysis of the factors under R.C. 3105.18(C)(1). Specifically, the trial court strongly considered the length of the parties' marriage, the disparity between the parties' incomes, the fact Wife will have to obtain her own medical insurance, and the prior standard of living of the parties. *See* R.C. 3105.18(C)(1)(a), (b), (d), (e), (g), and (n). We find that the record supports the trial court's findings under R.C. 3105.18(C)(1).

{¶ 24} We note Wife neither testified nor specified how much spousal support she was requesting or needed. In addition, other than the fact she currently rents a house for $750 a month, there was no evidence regarding her current and reasonably anticipated living expenses. Although she knew she would be required to buy her own health insurance after the divorce, Wife did not know how much it would cost her as she had not researched the issue. The record also shows Wife is self-employed as a hairdresser and a hair salon owner/operator. While she does not currently have renters, she has six vacant chairs in her salon she could rent to other hairdressers. We note there is no evidence indicating that Wife could not meet her monthly expenses based solely upon her income, let alone with the addition of the spousal support award. We further note that the trial court retained jurisdiction over both the amount and duration of spousal support.

{¶ 25} In light of the foregoing, we find that while the amount of the spousal support award may be minimal, the trial court did not abuse its discretion in awarding Wife $153 a month in spousal support for 12 years. *See Vertrees v. Vertrees*, 2d Dist. Clark No. 06-CA-

48, 2007-Ohio-2604 (upholding spousal support award of $100 a month despite parties' lengthy marriage, great disparity in parties' incomes, and fact that wife was six years older than husband and had significant health issues); *Campbell*, 2009-Ohio-6238 (upholding spousal support award of $100 a year for seven years despite parties' lengthy marriage, husband earning over $180,000, and fact that wife is no longer working following mental breakdown); *Tallman v. Tallman*, 6th Dist. Fulton No. F-03-008, 2004-Ohio-895 (upholding spousal support award of $1 a year for four years and rejecting husband's assertion the award was an abuse of discretion).

**{¶ 26}** Wife's assignment of error is overruled.

**{¶ 27}** Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.