[Cite as *Daniels v. Dunson*, 2023-Ohio-4686.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| KEITH DANIELS | : | |
| | : | |
| Appellee | : | C.A. No. 29873 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 03710 |
| | : | |
| DORIAN DUNSON | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on December 22, 2023

. . . . . . . . . . .

DORIAN DUNSON, Pro Se Appellant

KEITH DANIELS, Pro Se Appellee

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Dorian Dunson, pro se, appeals from a judgment of the Montgomery County Court of Common Pleas, which issued a civil stalking protection order (CSPO) against him after a full hearing. For the following reasons, the trial court's judgment will be affirmed.

# I. Procedural History

{¶ 2} On July 17, 2023, Keith Daniels sought a CSPO against Dunson, claiming that Dunson had threatened him with violence twice during the prior week. Daniels also alleged that Dunson had called his workplace with threats and that he could not go outside without Dunson staring at him. Daniels asked for and received an ex parte CSPO, which indicated that a full hearing would be held on August 1, 2023. Dunson was served with the ex parte CSPO on July 19, 2023.

{¶ 3} Both parties appeared for the August 1 hearing. Two days later, the trial court issued a CSPO, effective until December 31, 2024. In its factual findings, the court stated that it found Daniels credible and that he had established by a preponderance of the evidence that Dunson had engaged in a pattern of conduct which reasonably caused Daniels to fear physical harm. The court specified that on July 13, 2023, Dunson had yelled at Daniels in a rage and stated that he would "put hot lead" in him; Daniels understood the threat to mean that Dunson would shoot him. In addition, on July 15, 2023, Dunson had again yelled at Daniels in a rage, retrieved a sword or machete from inside his apartment, and then brought it outside to where Daniels was standing and swung it at him. The court ordered, among other things, that Dunson stay at least 50 feet away from Daniels. The court noted that the two men were neighbors in an apartment complex and that Dunson's physical presence within his apartment would not be a violation, although Dunson could not be in any common areas with Daniels.

{¶ 4} Dunson appeals from the trial court's order. He has not stated any assignments of error as required by the Ohio Rules of Appellate Procedure, but we infer

that he is challenging the issuance of the CSPO as against the manifest weight of the evidence. On appeal, Dunson argues that Daniels lied in his petition, and he disputes the trial court's factual finding that he came at Daniels with a sword. According to Dunson, he stood on his front porch, pointed his machete at Daniels, and called him a thief and a liar. Dunson claims that, with Daniels's permission, he had placed firearms in the glove compartment of Daniels's vehicle and those firearms disappeared. Dunson asks that we lift the protection order and require Daniels to return his firearms.

## II. Law and Analysis

{¶ 5} R.C. 2903.214 provides for the issuance of protection orders for persons who are victims of menacing by stalking. *See Clements v. Brown*, 2d Dist. Montgomery No. 29311, 2022-Ohio-1959, ¶ 8. The petitioner may request an ex parte order, and a hearing must be held as soon as possible, but no later than the next day that court is in session after the petition is filed. R.C. 2903.214(D)(1). If an ex parte order is issued, the court generally must schedule a full hearing within 10 days of the ex parte hearing. R.C. 2903.214(D)(2)(a).

{¶ 6} To merit a civil protection order under R.C. 2903.214, "the petitioner need not prove that the respondent intended to cause actual harm to the other person; instead, the evidence must show that the respondent knowingly engaged in a pattern of conduct that caused the other person to believe that the respondent will cause physical harm or that caused mental distress to the other person." *Stump v. Hoagland*, 2d Dist. Miami No. 2014-CA-26, 2015-Ohio-2434, ¶ 5, quoting *Walker v. Edgington*, 2d Dist. Clark No. 2007-CA-75, 2008-Ohio-3478, ¶ 23.

{¶ 7} "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21. Because the trier of fact sees and hears the witnesses, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *Stump* at ¶ 7, citing *Seitz v. Harvey*, 2d Dist. Montgomery No. 25867, 2015-Ohio-122, ¶ 41. The fact that the evidence or testimony is subject to different interpretations does not mean the judgment is against the manifest weight of the evidence. *E.g.*, *Peterson v. Booth*, 2023-Ohio-1301, 213 N.E.3d 251, ¶ 30 (2d Dist.).

{¶ 8} In this case, no transcript of the full hearing has been filed, as required by App.R. 9(B). Without a written transcript, we have no record of the evidence presented at the hearing, and we cannot speculate about what was said. In short, we have no basis upon which to review the trial court's factual findings or legal conclusions. *See Farley v. McKenzie*, 2d Dist. Montgomery No. 29217, 2022-Ohio-281, ¶ 6. Rather, "we are constrained to presume the regularity of the trial court's proceedings and that the evidence before the trial court supported the trial court's judgment." (Citations omitted.) *Payne v. Payne*, 2d Dist. Montgomery No. 27584, 2017-Ohio-8912, ¶ 7. Given the limited record before us, we cannot conclude that the trial court erred in issuing the CSPO against Dunson.

### III. Conclusion

{¶ 9} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.